David Junior WATSON, Petitioner,

v.

George A. RALSTON et al., Respondents.

No. 76–C–365.

United States District Court,
W. D. Wisconsin.

Aug. 16, 1976.

Jon P. Axelrod, Madison, Wis., for petitioner.

Stephen L. Morgan, Asst. U. S. Atty., Madison, Wis., for respondents.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

On June 15, 1976 a petition for a writ of habeas corpus was filed herein, alleging that petitioner, an inmate of the Federal Correctional Institution at Oxford, Wisconsin, in this district, was being threatened by respondent Ralston, as warden of the institution, and by respondents Sigler and Carpenter, as officers of the United States Parole Board, with being paroled "effective June 17, 1976, to the actual physical custody of Kentucky State detainer authorities. . . ." The petition alleged that delivery of custody of his body by the defendants to the Kentucky authorities would violate the Interstate Agreement on Detainers (hereinafter "the Agreement"). The relief sought was that petitioner be released from all custody pursuant to certain Kentucky detainers described in the petition; that respondent Ralston be restrained from turning petitioner over to Kentucky authorities or to the sheriff of Adams County, Wisconsin, pursuant to said Kentucky detainers; that judgment in the nature of a declaratory judgment be entered to the effect that under the Agreement, petitioner is entitled to dismissal of the said Kentucky detainers and to dismissal with prejudice of the underlying charges pending in the Kentucky courts; and that respondents be ordered to release petitioner on parole to society on August 18, 1976 (this is what the Parole Board had allegedly ordered to occur "if [Kentucky] detainer is withdrawn").

The said petition was accompanied by a motion for immediate disposition of the petition or, in the alternative, for an order restraining respondent Ralston from turning petitioner over to the Kentucky authorities or to the Adams County sheriff. On oral notice to the United States Attorney for this district, and prior to the entry of an order requiring a response to the petition, the court held a non-evidentiary hearing on June 16, 1976 on petitioner's motion, and on June 17, 1976 entered an interlocutory order enjoining defendants from giving effect to the detainers filed with respondents Ralston by the sheriff of McCreary County, Kentucky, on or about September 23, 1975.

On June 18, 1976 a response to the petition was ordered; on June 25, 1976 a response was filed; and on June 30, 1976 a traverse to the response was filed.

On July 2, 1976 the clerk of court issued a notice of a non-evidentiary hearing on the merits for July 14, 1976. On July 13, 1976 petitioner filed a motion for leave to file an amended petition for habeas corpus, and provided the court and opposing counsel with a copy of the proposed amended petition. Also, on July 13, 1976, there was filed an affidavit executed July 12, 1976 by a Sarah Baker, a law student participating in a program for legal assistance to inmates, containing certain factual allegations bearing on the case.

At the commencement of the July 14, 1976 hearing, the court inquired whether respondents objected to the granting of leave to file the amended petition; objection was made and overruled; leave was granted to file the amended petition and the court proceeded with the hearing as if the original amended petition (as distinct from a copy of it) had been filed. Also, at the commencement of said July 14, 1976 hearing petitioner served and filed a brief in support of his amended petition.

The amended petition realleges and incorporates the allegations and the prayer for relief of the original petition, and then proceeds to allege that certain events have occurred on and after June 19, 1976 (which was four days after the filing of the original petition and three days after the hearing on petitioner's motion for an interlocutory injunction). These events relate to the alleged filing of a motion by the petitioner on June 19, 1976 in Circuit Court for McCreary County, Kentucky, for an order dismissing the criminal charges underlying the detainers in question, and the alleged denial of said motion by the said Kentucky

court on July 7, 1976. In addition to the relief sought by the original petition, the amended petition prays for an order by this court releasing petitioner from, and dismissing, the criminal charges in the Kentucky Court which underlie the detainers in question.

I consider that for the purpose of entering an ultimate decision in this case in this court, I am limited to those matters of fact established by the original petition, the response to the original petition, and the traverse to the said response, and to matters of which I may take judicial notice; and that I may not consider the additional allegations of the amended petition to which there has been no opportunity for response. If the ultimate decision in the case in this court depends upon factual propositions not so established, it will be necessary to provide for a response to the amended petition and a traverse to the said response, and for an evidentiary hearing on the material facts then remaining in dispute.

I consider, however, that if the ultimate decision of this case cannot presently be entered, then in considering whether to vacate the interlocutory injunction, I may evaluate, among other parts of the record, the new allegations of the amended petition, and those contained in the Baker affidavit filed July 13, 1976.

In the following section of this opinion, under the heading "Facts," there is set forth those factual propositions of which I take judicial notice and those which are established by the original petition, the response thereto, and the traverse to said response.

### Facts

Petitioner is an inmate at the Federal Correctional Institution at Oxford, Wisconsin (FCI Oxford), in this district, pursuant to a judgment of conviction of a federal offense. On or about September 23, 1975, the sheriff of McCreary County, Kentucky, filed with the respondent Ralston, warden of FCI Oxford, five detainers based on indictments against petitioner pending in the circuit court for that county, charging him with various Kentucky state offenses. The said detainers were in the form of bench warrants issued by the clerk of the Circuit Court for McCreary County, Kentucky, on September 12, 1975, each of which described generally the nature of the offense but none of which states the date upon which the alleged offense occurred.

On or about December 1, 1975, petitioner filed with respondent Ralston for transmittal to the Kentucky authorities a request that final disposition of the untried charges enumerated in the detainers be speedily disposed of pursuant to the Interstate Agreement on Detainers (hereinafter "the Agreement"). On or about December 3, 1975 an agent of the respondent Ralston transmitted by certified mail petitioner's request for final disposition, together with the other documents which appear as Exhibits D, E, F and G attached to the petition herein. A set of the said documents was received by George W. Hatfield, Jr., County Attorney, McCreary County, Kentucky, on about December 4, 1975. As to another set of the said documents which was mailed to the Clerk, Circuit Court, McCreary County, Kentucky, on or about December 3, 1975 by certified mail with return receipt requested, no return receipt was ever received from the postal service by respondent Ralston or his agents. As of the month of December, 1975, the prosecuting attorney for McCreary County, Kentucky was G. G. Teague, Jr.

On or about March 5, 1976, respondent Ralston notified the Regional Counsel for the United States Bureau of Prisons in Kansas City, Missouri that he and his agents had failed to receive a response from "Mr. George W. Hatfield, Prosecuting Official, McCreary County, Whitely City, Kentucky." On or about March 9, 1976 the said Regional Director mailed a letter to "Mr. George W. Hatfield, County Attorney, McCreary County, Whitley City, Kentucky" explaining that respondent Ralston and his agents "forwarded to your office and court" the forms required under the Agreement, that no response had been received by re-

spondent Ralston or his agents, and that if Watson were not brought to trial in Kentucky within 180 days from receipt of the forms by the appropriate Kentucky officials, or if a continuance were not granted, "the detainer is rendered void."

Petitioner has not been brought to trial in Kentucky at anytime on the charges described in the detainers. No continuance has been granted by a Kentucky court, in the presence of petitioner or his counsel.

On March 26, 1976, the United States Board of Parole (of which respondent Sigler is chairman), through respondent Carpenter as its regional director, ordered that petitioner was to be paroled on the following basis: "Parole effective June 17, 1976, to the actual physical custody of Kentucky State detainer authorities, if detainer is withdrawn, parole effective August 18, 1976, to approved plan." Respondent Ralston and his agents have considered themselves bound by this order of the Parole Board to turn over custody of the petitioner to the sheriff of Adams County, Wisconsin, on June 17, 1976, in order to permit the Kentucky authorities to obtain physical custody of the petitioner but also to permit petitioner, while in custody of the sheriff of Adams County, to pursue whatever remedies might be available to him.

On November 24, 1975, this petitioner filed in this court, *pro se*, a proposed civil complaint in which he named the "McCreary Circuit Court" as respondent, together with a request that he be permitted to proceed *in forma pauperis*. He alleged that a time limit of 180 days for trial in Kentucky had passed and that he was being denied his Sixth Amendment right to a speedy trial. He prayed that the Kentucky charges be dropped. The pleading was construed by this court as a petition for habeas corpus, and leave to proceed *in forma pauperis* was granted on December 3, 1975. (Case number 75–C–563.) On the same date, respondent was ordered to show cause why the petition should not be granted. The petition and order to show cause were served in Kentucky on December 11, 1975 on the clerk of the Circuit Court for McCreary County. No response was filed. On February 3, 1976, the petition was dismissed by this court for the reason that it failed to allege that petitioner was in custody, within the meaning of 28 U.S.C. § 2241(c), as a result of any Kentucky charges. On April 6, 1976, petitioner submitted to this court, *pro se,* a "motion for a writ of habeas corpus," which was construed by this court as a proposed amended petition in 75–C–563. It alleged that detainers had been filed against him at FCI Oxford based upon the Kentucky charges, it alleged that he was being denied the speedy trial guaranteed him by the Sixth and Fourteenth Amendments, and it appeared to attempt to state a claim for relief under the Agreement. On April 13, 1976, this court dismissed the proposed amended petition on the ground that petitioner had failed to show that he had exhausted his state court remedies. On June 2, 1976, *pro se,* petitioner filed in this court a "motion for return of detainers," which was construed as a motion for relief from the April 13, 1976 order. With this motion, he submitted copies of certain papers relating to procedures in his case under the Agreement. On June 2, 1976 the motion was denied for the stated reason that petitioner had not shown that he had exhausted his Kentucky state court remedies within the meaning of 28 U.S.C. § 2254.

*Opinion*

The original petition herein presented a case under the Agreement. The amended petition adds a contention that "Kentucky" has violated petitioner's right to a speedy trial under the Sixth and Fourteenth Amendments "in that the Agreement is a contract designed to implement the speedy trial provisions of the Sixth Amendment." The relief sought in the amended petition is an order by this court releasing petitioner from, and dismissing, the Kentucky charges which underlie the challenged detainers. With respect to the case presented by the original petition, I consider that this court's role is identical to that of a trial court in a state which is a signatory to the Agreement and within which a prisoner is confined

pursuant to a conviction in a court of that state. With respect to the case presented by the amended petition, I consider that this court's role is that of a federal district court from which habeas corpus relief is sought by a state prisoner pursuant to 28 U.S.C. § 2254.

### 1. *The case presented by the original petition*

For the purpose of deciding this portion of the case, I will proceed on the basis of the facts as I have found them above, and I will assume the truth of the following additional allegations and contentions advanced by the petitioner in his traverse, in his amended petition, and in the affidavit by Sarah C. Baker filed July 13, 1976: that the mailing by respondent Ralston's agent to George W. Hatfield, Jr., on about December 3, 1975 was a forwarding to the appropriate prosecuting official within the meaning of the Agreement; that the clerk of the Circuit Court for McCreary County, Kentucky, received on about December 4, 1975 the set of documents mailed to him or her by respondent Ralston's agent; that on July 7, 1976, the Circuit Court for McCreary County denied a motion to dismiss filed there by the petitioner on or about June 19, 1976, which motion was based upon the Agreement; and that under Kentucky law, the July 7, 1976 order is not appealable.

The question thus presented can fairly be stated as follows: When it appears that the 180-day time limit embodied in Article III and V of the Agreement may have passed, and when the warden in the state in which the prisoner is confined and in which the detainer has been filed (the imprisoning state) threatens to make the prisoner available for physical apprehension by the state in which the underlying charge is pending (the charging state), and when the prisoner brings an action against the warden in the appropriate court of the imprisoning state to enjoin the warden from making him or her available for such apprehension, what is the correct response by the court in the imprisoning state?

The critical language of the Agreement appears in Article V(c) which provides that if the charges underlying the detainers are not brought to trial within the 180 days, "the appropriate court of the jurisdiction where the indictment, information, or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect." This language is amenable to at least three possible constructions. The first, urged by the petitioner here, is that the Agreement is self executing with respect to the efficacy of detainers; that is, that with the passage of the 180-day time limit, the detainers become nullities and neither the executive nor judicial officers of either state may accord them further effect. A second possible construction is that until the appropriate court in the charging state dismisses the charges, the detainers enjoy full force and effect. A third possible construction is that with the passage of the time limit, the imprisoning state should continue to give effect to the detainers for some purposes but may not give them effect for other purposes.

Obviously, when the prisoner and the various officials and courts in the two states share the same view of the meaning of the Agreement and of the facts of the case, no difficulty arises. That is, when the officials of the charging state acknowledge that the time limit is operative and that it has passed, they will make no attempt to apprehend the prisoner whether or not he or she is made available for that purpose by the imprisoning state. But when it appears that officials of the charging state will apprehend the prisoner, or may apprehend him or her, if the opportunity is provided, it becomes critically important whether the warden provides that opportunity.

To adopt the construction urged by the petitioner would be to hold that for all purposes the warden in the imprisoning state is obliged to make and act upon a factual and legal determination whether the prosecuting official and the court of the charging state have complied with the Agreement. If one were to suppose that

the charge is first degree murder, that both the prosecuting official and the clerk of the court of the charging state assert that notice was never received by them[1] or that a continuance was granted in the presence of counsel for the prisoner, and that the prisoner disputes these assertions, the warden is placed in an impossible position. It might be suggested that when such a controversy exists, the rule should be that the warden is uniformly to honor the detainers for all purposes or that the rule should be that the warden is uniformly to dishonor the detainers for all purposes, but neither such uniform rule would well serve the several purposes of the Agreement, not all of which may be wholly consistent. It might be suggested that whenever such a controversy arises, the warden must submit the question to the appropriate court of the imprisoning state for resolution. It surely appears that a court, rather than a warden is the appropriate agency to resolve such a controversy, but it would be awkward, on the warden's initiative, for the court of the imprisoning state to organize the judicial contest as between the true adversaries, namely, the prisoner and the charging state. If such controversies are uniformly to be resolved by a court, rather than by a warden, clearly the court of the charging state is the more appropriate judicial form.

The most logical and simple path to the latter result would be to adopt the second construction of the Agreement, namely, that the detainers enjoy full force and effect for all purposes unless and until the appropriate court in the charging state dismisses the underlying charges. However, so broad a rule may well impair unreasonably the interests of the imprisoning state and the interests of the prisoner. The imprisoning state has an interest in the reha-

bilitation of the prisoner. I take judicial notice that correctional authorities in many imprisoning states consider that their obligation to charging states which have filed detainers is to impose upon the prisoners a more restricted regime than that imposed upon prisoners not subject to detainers. Perhaps the explanation for this practice is that it lessens the chance that a prisoner will escape and thus avoid answering to the charges in the charging state. Perhaps the explanation is that the imprisoning states are unwilling to commit a portion of their resources for rehabilitation programs to a prisoner whose participation is subject to interruption by the transfer of temporary custody to the charging state. Whatever the explanation, imprisoning states which adopt this practice apparently consider themselves to enjoy less than the full range of options available in the treatment of prisoners generally. Also, of course, from the prisoner's point of view, the practice just described results automatically in lack of access to certain rehabilitative programs and to less severe conditions of confinement. Article I of the Agreement recognizes these "uncertainties which obstruct programs of prisoner treatment and rehabilitation."[2]

■ I conclude that the construction of the Agreement which best serves all of its purposes is the following: When it appears to the warden that the time limit embodied in Articles III and V may have passed, the warden is nevertheless required to provide the charging state with the opportunity to apprehend the prisoner within a reasonable time, but the warden may not distinguish between the prisoner in question and other prisoners in any other way for purposes of treatment, by reason of the existence of the detainer.

---

1. If one assumes that the warden has indeed failed to mail the papers or has mailed them to a state other than the charging state, the prisoner may well be entitled to some remedy but it is extremely doubtful whether he should be permitted to avoid the necessity to answer to the murder charge.

2. I remarked above that the purposes of the Agreement may not be wholly consistent. The purpose to ensure that imprisoning states promptly and ungrudgingly afford temporary custody to charging states to permit the latter to bring prisoners to trial is not wholly consistent with the purpose to permit the imprisoning states and their prisoners to engage in smoothly progressing treatment and rehabilitation programs. But the former purpose is afforded priority by the Agreement.

■ In the present case, it appears that the respondent warden (and the parole officials) were complying with this rule when they arranged to make the petitioner available to the Kentucky authorities for apprehension, and that they should not have been enjoined from doing so. On the present record, there is no basis for a finding whether the respondents have been distinguishing between the petitioner and other prisoners in other ways for purposes of treatment, by reason of the existence of the detainer, but injunctive relief to prevent such differentiation is a reasonable precaution.

If the Circuit Court for McCreary County responded on July 7, 1976 to petitioner's June 19, 1976 motion to that court in the manner in which petitioner alleges that the Circuit Court responded, I can understand the petitioner's distress. However, in determining a general rule for judicial enforcement of the Agreement, as between the courts of imprisoning states and the courts of charging states, the possible failure of a particular court to recognize its obligations in a particular case is irrelevant.

### 2. The case presented by the amended petition

For the purpose of dealing with the amended petition, I will proceed on the basis of the same findings of fact and the same assumed facts as those on which I have proceeded to deal with the original petition in this opinion.

■ I cannot accept petitioner's contention that by making the United States a signatory to the Agreement, Congress intended to pronounce that the Sixth Amendment guarantee of a speedy trial is to be measured by the provisions of the Agreement, or that, if Congress intended such a pronouncement, the judicial branch is bound by this congressional construction of the Constitution. Whether the Sixth Amendment guarantee of a speedy trial has been violated is a question to be answered by factual inquiry case by case. In this proceeding this petitioner has made no showing that his opportunity for a just determination of guilt or innocence in the Kentucky courts has been prejudiced by the delay in bringing him to trial.

### Order

1. Except as provided in paragraph 2 of this order, it is ordered that the respondents are enjoined from giving any effect whatever to the detainers filed with the respondent Ralston on or about September 23, 1975 with respect to charges against the petitioner pending in the Circuit Court for McCreary County, Kentucky.

2. The respondents may take any appropriate action to cooperate with law enforcement officers of the State of Kentucky or of any local unit of government within the state of Kentucky for the return of the petitioner to the state of Kentucky to answer to the charges referred to in said detainers. Said cooperation may include cooperation with the Sheriff of Adams County, Wisconsin, for the purpose of effectuating such return of the petitioner to Kentucky. More specifically, respondents may give effect to that portion of the "notice of action" by the United States Board of Parole dated March 26, 1976 which provides: "Parole effective June 17, 1976 [or later], to the actual physical custody of Kentucky State detainer authorities. . .".

3. Except as provided in paragraphs 1 and 2 of this order, petitioner's petition for habeas corpus, as amended, is denied.